Good morning, and may it please the Court, my name is Rob LeRoy. I represent Petitioner Hernan Hernandez in a case that should be decided based on existing precedent that's been applied consistently for the last several years, both by this Court and by the U.S. Supreme Court, using what has become the all-too-familiar categorical approach that's been consistently applied for the last several years, including the application of the categorical approach to a crime involving moral turpitude by this Court in Prudencia v. Holder, something that is almost entirely a creature of immigration statute. And there's good reasons that the courts have continued to apply the categorical approach. It provides consistency to immigrants who are going through proceedings both in criminal courts and immigration courts. I believe it was stressed in Moncrief, one of the big benefits of the approach is it allows an immigrant who has got a lot at stake, a lot of these people have been here for decades, to go into a criminal court and make a decision and know what the result's going to be. They can go in there and say, I know I'm going to be putting my time here in the United States at risk, I know I may be deported if I take this plea and I'm going to make the decision regardless. Moncrief also recognizes an exception, doesn't it? And it's that exception that is at issue here. That is exactly where the money is here, Your Honor. The exception that was addressed in Nijewan, which is whether or not you would use the circumstance-specific approach in this case or not. And I understand that that is a contentious point. I will say that, for example, in Prudencia, the government sought to have that approach used when they evaluated a crime involving moral turpitude. This Court declined. As a matter of fact, every time that it's come up in a published opinion, this Court has declined to use the circumstance-specific approach and has gone with the categorical approach. Can we go back just for the moment to the language in Moncrief, which explains that the categorical approach is appropriate where the INA incorporates other criminal statutes wholesale. But the circumstance-specific approach is appropriate when the INA's references to criminal statutes contain limitations written into the INA itself on the scope of the reference criminal conduct. So why would the domestic relationship issue not, under Moncrief, fall within the parameters of the exception? And I understand the Court's concern there. I think three points there is one, that the times we've seen the circumstance-specific approach, it's been related to numerical approaches, something where there may be a loss amount or that sort of thing over ten thousand dollars. That's something that a court, an immigration court, is capable of resolving. For example, if it's a mortgage fraud conviction, they can look at the loss amount that was found by the judge in the pre-sentence report. And so that's the circumstance where we've seen it applied. And when it comes to this particular statute, I think would be particularly difficult to apply. And I'll tell you why I think it would be. It presents some very unpalatable issues for an immigration court to confront for the first time. So when you look at the statute related to domestic violence, the 1227A2E, it addresses the crime of violence against a person committed by a current or former spouse. And that one's an easy one to figure out. But the next prong is against a person who the person shares a child in common. And that may or may not be clear. And I'll admit in this case it was pretty clear. There's a birth certificate. But you may have cases where someone's not on the birth certificate and you've got to argue about paternity. And then after that, it goes on to say an individual is cohabited with the other person or is similarly situated to a spouse. And so you get into all kinds of questions of how romantic was this relationship be? Did the person stay over two nights a week? Is that enough to say they cohabited? Did they keep some belongings in the other person's house? It's sort of a difficult line to put an immigration judge to make that decision. And what we want is for immigration judges not only across the country but even down the hall from each other to be making consistent decisions. And the use of the categorical approach allows us to do that. Beyond that, I think there's some very strong support in the U.S. Code itself for two primary reasons. The first of those reasons relates, it actually goes back to the line of cases that began with U.S. v. Hayes that started in this court. When this court took the first crack at U.S. v. Hayes, it used the rule of last antecedent. And it said when we're looking, well there were two things. There was an issue with the semicolon that's got nothing to do with this argument. But there's also the rule of last antecedent. And so when this court looked at Hayes, it said you've got the use of force provision and you've got the against a victim provision. It said the against a victim provision modifies the use of force. And so based on the rule of last antecedent, we have to find that the statute itself requires as an element both of those things. Now when the United States Supreme Court reversed, they found what I'm going to call a saving modifier in the use of the word element before the use of force provision. And so they concluded that based on the use of the word element, that only the use of force needs to be an element, but the against a protected victim does not need to be an element. They didn't say we're going to throw the rule of last antecedent out the window or anything like that. They just said that in this case we can infer intent based on the use of the word element. Now when we're looking at instead of the 922G provisions, which were at issue in Hayes, when we look at the 1227A2E provisions, we don't have the use of the word element. And I think that's very significant because when Congress made the decision to put element into the 920, I think it was actually 921 provisions, they specifically included the word element. When they went back and they created these provisions here, the word element was specifically not included there. And so I think the reading, which this court would, based on precedent and based on the rule of last antecedent, which has been embraced by a number of courts, we've got to read it the other way. And there's one other little trick within the statute that I think is relevant. When you're looking at 8 U.S.C. 1227, if you go down to section A7, there's a waiver for victims of domestic violence. And I recognize I did not specifically cite that provision in my brief. I brought extra copies if any of the court would care for those. But when it comes to 1227A7, in there it says it's a waiver for victims of domestic violence. The attorney general is not limited by the criminal court record and may waive the application of paragraph 2E1 with respect to, and that's the provision that we addressed earlier. And then later on in there in section 7B, it says credible evidence considered. And it says, in acting on applications under this paragraph, the attorney general shall consider any credible evidence relevant to the application. And so what I think that is, is a recognition by Congress that this is something that's going to be dealt with using the categorical approach, because they're specifically putting in wording saying we can go beyond that language that you use in the categorical approach. And this was a 2000 amendment. Why do you think it would be something that Congress would anticipate would be dealt with under the categorical approach, when so few states have statutes specifically prescribing domestic violence, in these cases almost invariably, prosecuted under general prohibitions? And that is, of course, my big issue that came when I read Hayes and when the immigration judge and the Board of Immigration Appeals ruled against us. I will say that Hayes announced, I think they said in there, that at the time of its enactment, one-third of the states had statutes relating to this. And by the time that the decision was made in Hayes, about half the states had laws that related specifically to, that covered these specific provisions. I'll also point out that the federal provisions, the VAWA Act, provided for a number of domestic violence specific offenses, such as traveling between states to commit an act of violence against a protected person. There's restraining order violations. So it's not quite as limiting as when you look at, for example, the statute at Nijawan, where you have a $10,000 threshold, where it said there is almost no statute whatsoever that addresses this. In this case, we have approximately half the states have specific laws governing an assault against a person who's in a specific relationship. You've also got federal laws. You've got a number of other relevant laws, including stalking laws that are present in most every jurisdiction that I'm aware of. And so it's not something where there's no authority whatsoever there. And that would be my response as to that. Finally, relating to that, I think there's two other distinctions there. One of them is in U.S. v. Castleman, when the United States Supreme Court went back and looked at some of these DV statutes post-Hayes, the Castleman court went on to specifically note, and I believe it was in footnote 4, I think I mentioned it in the supplemental authority, that there is a very big difference between the two statutes. There's a big difference in the misdemeanor crime of domestic violence that's addressed in the 922G provisions, as opposed to the 8 U.S.C. 1227A2E provisions that are present in the Immigration Code. And it went on to specifically state that the rationale in Hayes is not controlling, and that the misdemeanor crime of violence is something that was created specifically to address. Well, let's start from square one. Do you contend this statute is divisible or indivisible? I don't believe it's a divisible statute. Well, if it is, then the trial judge made findings that this was a domestic violence situation in the record, and we could uphold the immigration judge either under a modified categorical approach or the circumstance specific, couldn't we? We could, Your Honor. I think it would be tough to find a divisible statute, because you're dealing with a – you could maybe find a divisible statute among what type of weapon is being used, if it was a firearm, if it was a knife, if it was that sort of thing, but divisible as far as being against a certain victim, there's no prong of the assault with a deadly weapon statute that says this could be against a certain person or it couldn't be. So I don't think there's any divisibility there. I think while you could say maybe there's various classes of people that this would affect as victims, there's absolutely no provision in the statute there. And so my contention is that it's probably an all or nothing as far as being straight categorical approach or being circumstance specific. And my contention, of course, is that we go with the categorical approach and follow what we've seen over and over again. And finally, I'll just add that I think when we're going to the congressional intent and that sort of thing, this Court recently noted in Parral-Dominguez that when we're looking at congressional intent and we're weighing that against the Supreme Court's directives with the categorical approach, we're going to go with the U.S. Supreme Court. Well, you have some contrary – we would be creating a circuit split if we ruled in your favor, would we not? I think the circuit split's already there, Your Honor. The Ninth Circuit decided that this is a categorical approach. Now, I will note and concede that the Ninth Circuit decision was prior to Nijuan, but that Ninth Circuit decision has been upheld post-Nijuan. That's right. There have been a number of decisions that have done that. And then we do have the Fifth Circuit that came to the opposite conclusion. While I do understand the Fifth Circuit's reasoning, I will say that I think there's some misapplication of the Court's decision in Hayes that would go into reading the Fifth Circuit decision. And I think that's actually addressed by U.S.P. Castleman with that footnote there that may call into question the Fifth Circuit decision. But we do admittedly have the – Well, the Ninth Circuit's decision was pre-Hayes as well. Yes, Your Honor. It was pre-Hayes. But I think it's been upheld more recently than that, or at least been favorably cited to. But we do have the most favorable immigration circuit and the least favorable there that we're deciding between. So if there are no further questions, I'll reserve my rebuttal time. Thank you very much. Thank you.  May it please the Court, Breanna Stripley on behalf of the Respondent, the Attorney General of the United States. Your Honors, Petitioner in this case has already conceded his removability. Therefore, the only issue before this Court is whether the agency erred in pretermitting his cancellation of removal application for relief. This Court should find, as its sister circuit did in Bianco, that pursuant to the Supreme Court precedent in Hayes and Nijewan, the relationship aspect of the domestic violence definition under 8 U.S.C. 1227A2EI is subject to the circumstance-specific interpretation. Your Honors, in United States v. Hayes, the issue before the Court was whether to trigger the gun possession under 922 G9, the predicate misdemeanor must include, as an element of the crime, a domestic relationship between aggressor and victim. And the Supreme Court held that it did not. While the underlying misdemeanor must have the use of force element, the other criteria mentioned, namely the domestic relationship with the victim, that it need not be an element of the underlying offense. And the Court basically had two main reasons for deciding this, both of which are very important and applicable to this case. So the first was that the Court looked at the statutory definition. And it said element is singular. Exactly, Your Honor. And if you actually look at the statutory language defining misdemeanor crime of domestic violence, which is under the 921A33A, so the ACCA, and you compare it to 1227A2EI, they're virtually identical. Now, Petitioner raises that there isn't an element component in the INA. But really what that is is it says that it's a definition of crime of domestic violence. So if you just put in the definition of 16A into 1227, if you just write it out, you suddenly come up with identical language, virtually identical language, to the misdemeanor crime of domestic violence that the Court analyzed in Hays. And so in Hays, it was any offense that, quote, has as an element the use or attempted use of physical force or the threatened use of a deadly weapon committed by a person with whom the victim shares a child in common or other specified domestic relationships. Contrast that with 1227A2EI, and you find something very similar. It's any offense that has as an element the use, attempted use, or threatened use of physical force against a person or property committed by an individual with whom the person shares a child in a common and other similar specified domestic relationships. Both instances, element is singular. And what the Supreme Court said in Hays is that that is not just by chance. Congress intended the term element in the singular only modifies the use of force component and does not modify the relationship component. And had Congress wanted to do so, they could have made it plural. And so again, we have the similar language here. And secondly, and perhaps more persuasively, I know, Your Honor, you had mentioned this before, but where the practical considerations that come into play, if you read this in the way the petitioner would advocate that, it be done in a categorical. So in Hays, under the ACCA, the misdemeanor crime of domestic violence provision was enacted in 1996. Again, at that time, only a third of the states had criminal statutes that even had domestic violence as a specific component or described it. And even in those third of the states that had it, most domestic violence perpetrators were actually being prosecuted under assault and battery charges. So even in those third, it really wouldn't have much effect necessarily. And what the Supreme Court said in the Supreme was that Congress's intent could not have been that the law would be a dead letter in two-thirds of the states on the date of the enactment. And that it meant, it couldn't have meant to extend the firearm possession ban to only a relatively few domestic abusers. Now, Nijuan employed a similar analysis and also reached the same conclusion. In Nijuan, it was analyzing the AGFEL provision of 1101A43MI, which in this case was an offense that involves fraud or deceit in which the loss to the victim or victims exceed $10,000. In Nijuan, the Supreme Court unanimously endorsed the circumstance-specific approach with regards to immigration. And in particular, found that the $10,000 component does not refer to an element of the underlying fraud or deceit, but rather allows the definition to be satisfied on the basis of circumstance-specific surrounding offender's commission of a fraud or deceit crime on a specific occasion. Well, let me ask you, in light of Moncrief and DeKalb, do you think the circumstance-specific approach has any viability? Yes, Your Honor. Specifically in Moncrief, this court endorsed the circumstance-specific approach. It specifically recognized it. So in Moncrief, we've had the case where the alien was caught with 1.3 grams of marijuana in his car and pled guilty in Georgia to possession with intent to distribute. And the Moncrief court basically, in this case, DHS, was trying to remove him as an illicit drug trafficker, which is an aggravated felony ground. And so the Moncrief court, referring to the Nijuan court, said, hey, this is a specific crime that the Nijuan court said is a generic offense. So if you go back to Nijuan and you look when it kind of weighed which parts of – so 1101 is the part of the INA that defines which crimes are aggravated felonies and which aren't. In Nijuan, the court kind of weighed out some that said these would probably be generic crimes and these would probably be prone to circumstance-specific. Illicit trafficking was one that this court in Nijuan specifically listed as a generic crime, hence would be the type of crime that would be suitable for a categorical, modified categorical analysis under the Taylor-Shepard progeny. Whereas in this case, the Moncrief court not only followed Nijuan but clarified that the language that suggests circumstance-specific must come from the INA. So it can't go and cross-reference a criminal statute wholesale. And that's what the court was doing. It was cross-referencing the controlled substance schedules and other criminal offenses. Whereas here, that language that basically modifies the – and, you know, is the limiting of the actual crime that petitioner was convicted of, in this case the crime of violence, the domestic component. That language is contained within the INA. The definition is written out in 1227. And so it completely comports with Moncrief. So if anything, Moncrief further supports that not only is the circumstance-specific approach viable, but it's viable in this specific case. Again, to hone in on kind of what would happen if this court were to accept petitioner's position, that the categorical approach applies in this case. The Nijuan court was evaluating, as did the Hayes court, and it cited to the Hayes court, that if you were to apply the categorical approach to MI, it would basically have little, if any, meaningful application because only three federal fraud statutes contain a monetary loss. And further, at the time of the enactment, there was only eight states that had fraud and deceit statutes. So, again, you know, part of the analysis of whether or not to apply the circumstance-specific approach is what effect applying a wholesale categorical approach would have on the statute and seeing whether Congress could have intended that. Notably, the crime of domestic violence definition that was discussed in Hayes and also 1227A2EI, which is what's at issue in this case, were both enacted in 1996. So the court's analysis in Hayes of all of the facts that only domestic violence applied and a third of the states had statutes specifically relating to that is directly applicable to this case. So, in other words, this court should reject any interpretation of a crime of domestic violence that would have been a dead letter to some two-thirds of the states from the very moment of its enactment and would still be inapplicable in about half of the states today. Mr. Haroi points out to the difficulties that were in here in applying anything other than the categorical approach. Part of the virtue of the categorical approach is its facial simplicity, which is compromised if the IJ is called upon to make what could be not here, not necessarily here, but in other circumstances some very discreet and possibly messy factual determinations. How do you respond to that? Your Honor, I think that that is best addressed by Justice Ginsburg footnote number nine in Hayes, where she basically said that it would not entail an elaborate fact-finding process, those are her exact words, to determine the domestic relationship component. Again, in a very similar context, IJs are fact-finders. This is, again, what they're good at doing. They are like any trial judge that would be able to go and look at the facts. Obviously, in those cases, it would depend on whose burden it was. If this was based on a ground of removability, it would be DHS's burden. However, in a case like this, where it's really only to see whether or not petitioner is statutorily barred from a form of relief, it would be petitioner's burden to show those facts at the trial level. Let me ask you this question. Yes. Let me ask you this question. If you are going to analyze this under the circumstance-specific approach, then Moncrief is of no help to Zavala. Is that right? I'm sorry. I didn't catch that last part. Moncrief is not. Is of no benefit to Zavala, because that applied the categorical approach. Right. So somewhat it can be confusing, so let me just specify. There are really two components to 1227A2EI. The first is a use of force component, that there would be a crime of violence. And the second is that it be committed by someone against a domestic, so a domestic relationship component. With the first part, the crime of violence component, that is still in play with regards to the categorical modified categorical. That would need to be proved up that way. It's only with regards to the domestic relationship element that circumstance-specific approach would apply, meaning that you can go to the facts to find out whether or not this person had a domestic relationship. So in this particular case, whether Petitioner, who was convicted of assault with a deadly weapon, actually committed that against someone who was in a domestic relationship with the Petitioner. I'm not sure if that answered your question or not. Thank you. I would just emphasize, too, I know Petitioner had advocated that there is a circuit split. We would respectfully disagree. The Ninth Circuit case predated Nijewan and Hayes. Nijewan and Hayes changed the legal aspect and the legal landscape of this particular issue. The only court to have decided this post-Nijewan and post-Hayes was Bianco. And in that case, the Fifth Circuit, relying on both of those Supreme Court precedents, found that the crime of domestic violence need not have as an element the domestic relation of the victim to the defendant. In other words, the Fifth found that the board properly concluded that the relationship aspect of the domestic violence ground may be satisfied on the specific circumstances surrounding the Aliens Commission of the Crime of Violence on a specific occasion. Unless this Court has any further questions. Thank you. Briefly. Mr. Harari, you reserved a few minutes for rebuttal. Thank you, Your Honor. I'll be brief here. May it please the Court, Petitioner is in no way making any light of the protections that Congress meant to apply towards victims of domestic violence through those amendments. But the counter to that is it's also a big deal to deport someone and take them away for their homeland. And so when Congress did enact these amendments, when it enacteded the 922G provisions, it specifically put the word element in there. When we had the 1227E provisions, A2E provisions, the use of the word element is not there. And I think that's a big deal because the Congress made a point to say we need an element of crime of violence for this one point, but we're not stating that it has to be an element of the offense when it comes to the victim angle. And then again, in 2000, Congress went back and made additional amendments pursuant to the VAWA provisions, and they put in the waiver, and in the waiver they specifically mentioned documents outside the record and that sort of thing, which implies we're going to be potentially going to a categorical approach when we look at this. So based on that, as well as my previous arguments, I would argue. Although in Hays, the Supreme Court said that's true with respect to the crime of violence. That has to be an element. But the question is whether the domestic relationship also, in addition, has to be an element. Yes, Your Honor, and I would argue that based on the rule of last antecedent that was embraced by these courts. I understood your argument. I was simply trying to point out that we weren't necessarily arguing about whether there had to be an element. The question was whether it's the domestic relationship component that has to be an element. Yes, thank you, Your Honor. Additionally, Your Honor, just to briefly respond to one or two points, when we talk about this being something that can be resolved in the immigration courts, one thing to consider is the subpoena power that exists for someone would have in the criminal court. It's much easier to subpoena someone whereas there are no inherent rights to subpoenas in the immigration context. If someone appears in front of an immigration judge, we can't just issue an administrative subpoena to bring a witness to court, whereas the thing does come into play in the criminal court. Additionally, Your Honor, I think Judge Floyd, you asked me if there might be room for the modified categorical approach, and I think as the respondent pointed out, there is some room for the modified categorical approach with regard to the use of force. So I think I didn't speak about that earlier. Well, I hesitate to use the word policy because the Congress doesn't like for us to make policy, but there are two competing policy considerations here. One is the protection of people like the client, and the other policy argument is to protect people who are victims of domestic violence. And if we adopt your approach as to the categorical approach, then essentially we're writing off a considerable number of domestic violence victims in this country, aren't we? Potentially, Your Honor, and I think there are policy considerations all across the board in this one, and I think it also comes down to the issue of use of the categorical approach versus congressional intent and where sort of the supremacy comes in, and that's sort of been an interesting issue for me the entire time since this has happened. That's why I was somewhat happy to see the decision in Parole Dominguez come down recently, but I certainly understand the Court's concerns there and why that makes this one a difficult decision. So thank you, everyone. Thank you. Thank you. Judge Hamilton, would you be amenable to a few minutes break? That would be fine. Thank you. Okay, so we will take a break for a few moments. We will come down and greet counsel and then break for a few moments. Thank you. Thank you. This Honorable Court will take a brief recess.
judges: Allyson K. Duncan, Henry F. Floyd, Clyde H. Hamilton